J-A23044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| J.D., | : | |
| | : | |
| Appellee | : | No. 435 WDA 2014 |

Appeal from the Order entered on February 18, 2014
in the Court of Common Pleas of Lawrence County,
Civil Division, No. 10677 of 2013

BEFORE: DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED SEPTEMBER 26, 2014**

J.S. ("Mother" or "Plaintiff") appeals from the Order (hereinafter "Custody Order") awarding (1) shared legal custody of her two children, My.D. (d.o.b. 10/22/09) and Ma.D. (d.o.b. 10/2/10) (collectively referred to as "the Children"), to Mother and J.D. ("Father" or "Defendant"); (2) primary physical custody to Father; and (3) partial physical custody to Mother. We affirm.

The trial court set forth the relevant facts and procedural history underlying this appeal in its Opinion, which we incorporate herein by reference. *See* Trial Court Opinion, 4/2/14, at 2-6.[1]

On appeal, Mother presents the following issues for our review:

---

[1] We observe that the parties' current residences are located approximately 250 miles apart.

I. Whether the trial court erred in entering an award of custody not in accord with the statutory factors[?]

II. Whether the trial court erred in overemphasizing certain of the statutory factors while ignoring the import of the remaining factors, including Mother's role in performing parental duties and being the primary caregiver, and Father essentially relocating the [C]hildren[?]

Mother's Brief at 6.

Our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Additionally, this Court has stated that

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

Section 5338 of Child Custody Act ("the Act")[2] provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338; *see also M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (stating that "[t]his standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." (citation omitted)). Moreover, in any custody action between two parents, there is no presumption that custody should be awarded to a particular parent. 23 Pa.C.S.A. § 5327(a). Section 5328(a) of the Act sets forth sixteen factors (collectively referred to as "the best interest factors") that a trial court must consider when awarding custody. *Id.* § 5328(a).[3]

We will address Mother's two related issues simultaneously. Mother argues that the trial court abused its discretion by awarding primary physical custody to Father, and challenges the trial court's weighing and application of the best interest factors. *See* Mother's Brief at 10-32. Mother emphasizes the trial court's following finding in its Pa.R.A.P. 1925(a) Opinion: "The [c]ourt is being called upon to submit a difficult decision[,] as both parties demonstrate good parenting skills and each ha[s] encouraged a

---

[2] *See* 23 Pa.C.S.A. §§ 5321 to 5340; *see also C.R.F.*, 45 A.3d at 445 (stating that, where, as here, the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

[3] The best interest factors are listed in the trial court's Opinion. *See* Trial Court Opinion, 4/2/14, at 6-7.

strong relationship between the [C]hildren and the other parent. The [C]hildren would be well served by either parent having primary custody." Mother's Brief at 11 (quoting Trial Court Opinion, 4/2/14, at 16 (emphasis omitted)). Regarding the best interest factors, Mother asserts that "[t]here was insufficient evidence in the record for the [trial] court to favor Father over Mother as to the provision of stability and extended family, and to infer that Father will better provide for the [C]hildren's emotional, developmental and educational needs." *Id.* at 10; *see also id.* at 11 (arguing that "the court also overemphasized the [Children's] sibling relationship with Father's infant daughter."). Additionally, Mother argues that the trial court erred by failing to properly consider two incidents of prior physical abuse that Father committed against Mother. *Id.* at 15-17. Finally, Mother asserts that the trial court erred by failing to consider that she, not Father, had been the primary caregiver to the Children, and that this weighed in Mother's favor. *Id.* at 18, 33-36; *see also id.* at 34-35 (arguing that the trial court erred by "completely ignoring" the primary caretaker doctrine in this regard).

Initially, we observe that in *M.J.M., supra*, this Court stated that, since section 5328(a) of the Act expressly states that "all relevant factors shall be considered by the trial court, and the only factors that should be given 'weighted consideration' are factors that 'affect the safety of the child,'" the legislature did not intend the trial court to give additional consideration to a parent's role as the primary caretaker. *M.J.M.*, 63 A.3d

at 338 (quoting 23 Pa.C.S.A. § 5328(a)). The Court recognized that the section 5328(a) factors incorporated considerations relevant to the primary caretaker doctrine, and therefore, "the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable." **M.J.M.**, 63 A.3d at 339. Accordingly, to the extent that Mother asserts that the trial court erred by failing to consider the primary caretaker doctrine and weighing her status as the primary caretaker in her favor, she is not entitled to relief.[4]

In its well-reasoned Opinion, the trial court thoroughly addressed each of the sixteen best interest factors. **See** Trial Court Opinion, 4/2/14, at 7-16. The trial court also explained its reasons for finding that these factors "weigh slightly in favor of [Father]." **See id.** at 16-19. We incorporate the trial court's analysis and findings herein by reference. **See id.** at 7-19.

In all of her claims on appeal, Mother essentially asks that we render factual determinations different from those made by the trial court, and make different credibility and weight decisions. Our role does not include

---

[4] We additionally observe that the trial court specifically addressed in its Opinion, as part of its consideration of the best interest factors, Mother's role as the Children's primary caretaker while the parties were married and Father was serving in the military. **See** Trial Court Opinion, 4/2/14, at 19 (stating, *inter alia*, that "[t]he [c]ourt finds no reason to weigh that factor against [Father,] as he was earning money to provide for his family while [Mother] was home to care for the [C]hildren."); **see also M.J.M.**, 63 A.3d at 339 (stating that "a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).").

making independent factual determinations, nor are we permitted to disturb the trial court's determinations regarding credibility of the witnesses and the weight of the evidence, which are within the sole province of the fact-finder. *See C.R.F., supra*; *see also M.J.M.*, 63 A.3d at 337 (refusing to disturb the trial court's factual findings and credibility determinations pertaining to the best interest factors). Moreover, our review discloses that the record supports the trial court's findings regarding the best interest factors. *See C.R.F., supra* (stating that "[w]e must accept findings of the trial court that are supported by competent evidence of record ….").

Accordingly, because we discern no abuse of discretion by the trial court in weighing the relevant factors involved in this close case, we affirm the Custody Order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014

J-A25099-14            Circulated 09/06/2014 02:40 PM

J███ S███████,                    : IN THE COURT OF COMMON PLEAS

                      Plaintiff,   : LAWRENCE COUNTY, PENNSYLVANIA

vs.                                : CIVIL DIVISION

J████████ D████,                   : NO. 10677 OF 2013

                      Defendant.   :

## APPEARANCES

For the Plaintiff:          Darren Oglesby, Esq.
                            Wilder Mahood McKinley & Oglesby
                            10th Floor, Koppers Building
                            436 Seventh Avenue
                            Pittsburgh, PA 15219

For the Defendant:          Larry J. Puntureri, Esquire
                            2102 Wilmington Road
                            New Castle, PA 16105

## OPINION

Cox, J.                                                    April 2, 2014

In the instant matter, the plaintiff J██ S██████ has filed an appeal from the Order of Court and Opinion dated February 18, 2014, in which the Court granted the Defendant's Petition For Modification Of Custody Order and provided him with primary physical custody of M.D. and M.D. during the school year commencing in the Fall of 2014. The Plaintiff has filed a timely Notice of Appeal and a Statement Of Matters Complained Of On Appeal, which were both dated March 12, 2014. In that Statement Of Matters Complained Of On Appeal, the Plaintiff asserts the Court committed the following errors:

I.      In awarding primary physical custody to the Defendant;

II.     In entering an award of custody not in accord with the Statutory Factors;

III.    In failing to properly consider each party's respective willingness to encourage a continuing relationship between the children and the other party;

IV.    In failing to properly consider safety concerns in its award of custody;

V.    In failing to consider the lack of parental duties performed by the Defendant;

VI.    In improperly finding a relationship among half-siblings;

VII.    In finding that the Defendant provides a greater measure of stability for the children;

VIII.    In finding that the Defendant is more likely to attend to the children's educational needs;

IX.    In basing its decision on a school schedule that will not take effect for over eighteen months;

X.    In basing its decision on the Defendant's work schedule; and

XI.    In basing its decision on the Defendant residing with his girlfriend.

The Defendant met the plaintiff, J███ S█████, in January of 2009, which was during his second year of military service in the United States Marine Corps. The Plaintiff became pregnant shortly thereafter and the couple married. The parties obtained a two bedroom apartment in North Carolina, where the Defendant was stationed. Their first child, M.D., age 4, was born on October 22, 2009, shortly after the Defendant returned from his first deployment overseas. At some point during their marriage, the Plaintiff and the Defendant were playfully wrestling with each other when the Plaintiff began, as the Defendant described it, "ball tapping"[1] the Defendant.[2] In response, the Defendant placed his hand on the Plaintiff's neck and pushed her away.

---

[1] This is in reference to the Plaintiff lightly striking the Defendant in the groin area.
[2] This recitation of events is based upon the Defendant's testimony, which seems to have been sanitized to lessen its detrimental effect. However, the Plaintiff failed to provide testimony to contradict his recollection and she did not express any concerns or fears of him now or with the children.

The Plaintiff left the residence and relocated to her parents' home in Pennsylvania. However, the Plaintiff and the Defendant reconciled and she returned to their residence. She then became pregnant with their second child, M.D., age 3, who was born on October 2, 2010. In January of 2011, the Defendant was deployed in Afghanistan until August of 2011. While he was away from home, the Defendant maintained contact with the Plaintiff and their child through Skype[3] two or three times a week. Also, during their marriage, the Plaintiff and the Defendant attended a party where they began drinking alcohol and the Defendant apparently attempted to playfully lift the Plaintiff off of the ground by placing his hands around her neck while she placed her hands on his wrist. Something went wrong with the execution of the stunt and the Plaintiff felt some discomfort afterwards.[4] In September or October of 2011, the parties separated again. The Plaintiff and the children returned to Adams County, Pennsylvania while the Defendant remained in North Carolina to complete his military service.

Once the Defendant received the opportunity to complete his military service ahead of his scheduled release date, he did so and returned to Lawrence County. Initially, he moved into a friend's residence in Slippery Rock, Pennsylvania, briefly and then moved into his parent's residence for a longer period of time. He then began dating Jackie S████ and they soon resided together at 911 Adams Street, New Castle, Lawrence County, Pennsylvania. During that time, Ms. S████ gave birth to their child, A.D. The Defendant and Ms. S████ are engaged to be married on June 13, 2015. They decided to relocate to the Mohawk School District to provide better educational opportunities for their children. It must be noted that Ms. S████ also has

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

---

[3] Skype is a computer program that allows people to video chat over the internet.
[4] This is the Defendant's recollection of the events, which, largely, was not contradicted by the Plaintiff.

3

a five-year old son unrelated to the Defendant. While they were searching for a residence, they both moved into their parents' residences. They eventually leased a residence at 2478 Churchill Road, Hillsville, Lawrence County, Pennsylvania, which contains four bedrooms, one kitchen, one living room, one dining room and two bathrooms.

The Plaintiff also had several residences after she separated from the Defendant. When she initially returned to Pennsylvania, the Plaintiff resided at her father's residence at 20 Hampton Drive, East Berlin, Adams County, Pennsylvania. She then moved into her own apartment at 721 South Mountain Road, Dillsburg, Pennsylvania, for a year before moving to 37 Cougar Drive[5], which is in Adams County, Pennsylvania. The Plaintiff again rented another residence in Adams County. She eventually left that residence as well. The Plaintiff now resides with her boyfriend, G▓▓ H▓▓, at 342 Penn Street, Hanover, York County, Pennsylvania. That residence contains three bedrooms, a living room, kitchen, dining room and one bathroom.

In May of 2012, the Plaintiff obtained an Order of Court issued by the Honorable Robert G. Bingham of the Court of Common Pleas of Adams County, which provided the parties with joint legal and physical custody of M.D. and M.D. (hereinafter "the children"). The Order of Court initially stated that each party would have physical custody of the children for six consecutive months a year. However, both parties believed shorter periods of custody were in the best interest of the children and they began sharing custody on a month to month basis. The parties continue to share custody in this manner. However, that arrangement is becoming untenable due to the distance between the parents, and their oldest child will begin a Head Start preschool program in

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

---

[5] The Plaintiff did not identify the city where that residence was located.

4

commencing in the Fall of 2014. The Plaintiff has filed a timely Notice of Appeal and a Statement Of Matters Complained Of On Appeal dated March 12, 2014.

In a child custody action between the parents of the children in question, there is no presumption that custody should be awarded to either parent. 23 Pa.C.S.A. § 5327(a). In making a determination, the Court bases its findings on how the best interests of the children may be served. Arnold v. Arnold, 847 A.2d 674, 677 (Pa.Super. 2004). It is axiomatic that the paramount concern in a child custody case is the best interests of the child, and the Court makes its determination based upon a consideration of all factors legitimately affecting the child's physical, intellectual, moral and spiritual well being. Id. The Court is required to determine the best interest of the child by considering the following factors:

(1)   Which party is more likely to encourage and permit frequent and continuing contact between the child and other party.

(2)   The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3)   The parental duties performed by each party on behalf of the child.

(4)   The need for stability and continuity in the child's education, family life and community life.

(5)   The availability of extended family.

(6)   The child's sibling relationships.

(7)   The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)   The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

6

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1)-(16).

First, the Court must determine "Which party is more likely to encourage and permit frequent and continuing contact between the child[ren] and other party." 23 Pa.C.S.A. § 5328(a)(1). Both parties appear to be willing to encourage a continuing relationship between the children and the other party. They both have worked amicably to determine the terms of their custody as evidenced by the parties altering the original Order of Court in Adams County mandating six-month custody for the parties. The Plaintiff explained it was in the best interest of the children to shorten the visits to one month as the children were so young at the time. The Plaintiff must be commended as she was willing to forego her allotted six month custody to alter the custody order and

provide the Defendant with his custody after one month. In addition, the Plaintiff stated her belief that it is important for the children to have a good relationship with their father. The Defendant also encouraged the children to have a relationship with the Plaintiff as he had physical custody of the children at the end of February in 2012, and returned the children to the Plaintiff in April of that year so they could celebrate the Plaintiff's birthday. Both parties agreed that their original custody order of six month physical custody was not in the best interest of the children and it was more beneficial to alter that to one month physical custody to ensure a better relationship between the parties and the children. Ultimately, both parties were willing to cooperate to determine the proper physical custody arrangement to encourage the children to have a relationship with both parties. The parties also indicated a willingness to modify their arrangements for special occasions, such as attending birthday parties or vacations. Moreover, the lines of communication between the parties appear to be improving as stated by the Defendant during his testimony. As such, it appears that this factor weighs slightly in favor of the Plaintiff, but both parties have acknowledged the necessity of encouraging a good relationship between the children and the other parent. Both parties have been cooperative with each other and there have been no disputes over the current custody schedule.

The second factor is "[t]he present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child." 23 Pa.C.S.A. § 5328(a)(2). During their first month living together, an incident occurred in which the Defendant and the Plaintiff were playfully

wrestling when the Plaintiff began, as the Defendant explained it, "ball tapping" the Defendant. In response, the Defendant pushed her away by placing his hand on her throat. This caused the Plaintiff to return to Pennsylvania. There was also a second incident in which the Plaintiff and the Defendant were attending a party and consuming alcohol. In an attempt to perform a party trick, the Defendant tried to lift the Plaintiff off of the ground by placing his hands around her neck while she was to hold his wrists to alleviate pressure from her neck. Apparently, the trick was not performed properly and the Plaintiff incurred some discomfort. The Defendant also had a Simple Assault conviction stemming from an incident in which he participated in a physical altercation with another male in 2009. It must be noted that these incidents appear to be in the past and the parties have moved on from them as the Plaintiff stated in her testimony that she does not worry about the well-being of the children when they are with the Defendant. The Court is also satisfied that these incidents are in the past and are not likely to occur again. Hence, both parties are able to provide a safe environment for the children.

The third factor is "[t]he parental duties performed by each party on behalf of the child[ren]". 23 Pa.C.S.A. § 5328(a)(3). Both parties are more than adequate in performing their parental duties. During their marriage, the Plaintiff performed approximately 70 percent of the parental duties as the Defendant was enlisted in the military and had to attend to his responsibilities as an active soldier. Now, both parties attend to the cooking, feeding and bathing of the children when the children are living with them. The Defendant explained that he assumes the parental duties of caring for the children at all times when he is not at work. The testimony also indicates that both parties discipline the children when necessary by usually instituting timeouts when the

children misbehave. Furthermore, both parties have begun educating the children by teaching them to count to ten, teaching them the alphabet and educating them concerning colors and shapes. The Court is satisfied that both parties can adequately care for the children and perform their parental duties.

Fourth, the Court must examine "[t]he need for stability and continuity in the child's education, family life and community life." 23 Pa.C.S.A. § 5328(a)(4). Again, both parties appear to be able to provide an acceptable amount of stability for the children in all areas of their lives. Even though the parties have moved several times since their divorce, both parties have indicated that they are currently in stable relationships and have secure living arrangements. The Defendant has testified that he and Ms. S█████ moved into the Mohawk School District so that the children could attend school there. It is the Defendant's aspiration for the oldest child to attend the Head Start preschool program provided by the Mohawk School District in the Fall of 2014, and for the youngest child to do the same when she reaches the proper age. The Plaintiff stated that it is her desire for the children to attend private Catholic schools as the local intermediate and high schools are substandard where she lives. In addition, both parties have extensive families living near them to provide extended family stability for the children. However, the Plaintiff works the 2:00 p.m. to 10:00 p.m. shift at Sarah Todd Nursing Home located in Carlisle, Pennsylvania, which would not provide her with much time to spend with the children when they begin to attend school. It must be noted that she did not indicate that she would be seeking to work another shift to allow her to spend more time with the children. In addition, the children would be required to stay with their grandmother while the Plaintiff is at work; however, there is no indication as to

10

how the children would get from their school to their grandmother's residence, as it is 20 minutes away and transportation plans for school were not explained by the Plaintiff. Conversely, the Defendant works swing shifts, which consists of him working daylight for seven days and four days off followed by afternoon shift for seven days and one day off and then midnights seven days and three days off. This allows the Defendant to be home with the children when they arrive home from school for two of the three shifts he works. Additionally, the children are able to stay in their residence when living with the Defendant during the time he is at work, as his fiancée is a stay-at-home mother and is able to care for them. This permits the children to return directly home after school when living with the Defendant, even if he is at work. In addition, the Defendant's mother is available to care for the children, and she also resides in the Mohawk School District. Hence, this factor weighs slightly in favor of the Defendant as he provides the more stable environment for the children when they begin attending school.

Fifth, the Court must take into account the extended family of the parties. 23 PA.C.S.A. § 5328(a)(5). From the testimony provided to the Court, both parties have extended families, who reside near them. The Defendant resides near his parents, his grandparents, an aunt and uncle who have a seven year-old son that frequently visit with the Defendant and the children, and many other relatives who live in close proximity to Defendant's residence. The Defendant's fiancée also has extensive family who live in the local area, such as her mother and sister, who visit their residence at least twice a week. The Plaintiff resides within a short drive of her family members as well, such as her mother, uncle and cousin, who live in the same residence, which is a 20-minute drive from the Plaintiff's residence. She also lives near her sister and other family members.

11

In addition, the Plaintiff's boyfriend, Mr. H██████, has family that lives in close proximity to them and they are very friendly with the children. It must be noted that the Plaintiff's father lives approximately 70 miles away from her current residence. This factor slightly favors the Defendant as his parents live within a few minutes of his residence, while the Plaintiff's mother lives 20 minutes away and her father lives 70 miles away.

The sixth factor is the children's relationship with siblings. 23 Pa.C.S.A. § 5328(a)(6). The children have one half-sibling, as the Defendant has a child, A.D., with Ms. S. ██████████. The children have created a bond with their half-sister as evidenced by the testimony of the Defendant and Ms. S██████, who both stated that the children enjoy playing with A.D., teaching her shapes and colors, and they often want to help feed and care for her. The Plaintiff also acknowledged this relationship as the children often speak of A.D. when they return from the Defendant's residence.

The Pennsylvania Courts have created a policy to permit siblings to be raised together whenever possible. Johns v. Cioci, 865 A.2d 931, 942 (Pa. Super. 2004) (citing Wiskoski v. Wiskoski, 427 Pa. Super. 531, 629 A.2d 996, 999 (1993)). This policy maintains that, absent compelling reasons, siblings should be raised in the same household to permit continuity and stability for the children's development. Id. (citing Pilon v. Pilon, 342 Pa. Super. 52, 492 A.2d 59, 60 (1985)). It must be noted that this doctrine does not distinguish between half-siblings and siblings who share both biological parents. Id. It is apparent that this policy is only one factor to be considered by the Court and it is not a controlling factor in determining custody, but it is compelling. Id. (citing E.A.L. v. L.J.W., 443 Pa. Super. 573, 662 A.2d 1109, 1118 (1995); Cardamone v. Elshoff, 442 Pa. Super. 263, 659 A.2d 575, 583-584 (1995); M.D. v. B.D., 336 Pa.

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

Super. 298, 485 A.2d 813, 816-817 (1984)). However, this doctrine is often utilized in cases where the children have been reared together prior to the separation or divorce of the parents. Id., 865 A.2d at 943 (citations omitted). "In cases where the siblings have not been reared in the same household, the force of the doctrine is less compelling." Id. In the current matter, the children have created a bond with their half-sibling and they spend all their time with her when they are living with the Defendant. However, A.D. was not born until the Defendant returned to Lawrence County after the Defendant and Plaintiff divorced. As such, the doctrine is clearly less compelling as the children have only become accustomed to seeing A.D. when they visit their father. The Court notes that this factor does weigh in favor of the Defendant as the children have shown great affection for their younger half-sibling.

The statute states that the Court should take into account the well-reasoned preference of the children. 23 Pa.C.S.A. § 5328(a)(7). However, the children's preferences were not presented to the Court by either party due to their young age. The Court is required to take into account any attempts by one parent to turn the children against the other parent. 23 Pa.C.S.A. § 5328(a)(8). There is no evidence that either parent attempted to turn the children against the other parent. As such, the Court is unable to weigh either of these factors.

The ninth factor is "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs." 23 Pa.C.S.A. § 5328(a)(9). Similarly, the tenth factor states, "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." 23 Pa.C.S.A. § 5328(a)(10). Both parties are able to provide

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

13

a loving and stable relationship with the children. Moreover, each parent is able to provide for the emotional and developmental needs of the children. It must be noted that the Defendant may be more capable of providing for the educational needs of the children as he appears to be more organized and structured in his parenting of the children. He also provides them with more discipline as he more often continues his timeouts until the appropriate lesson is learned by the child, while the Plaintiff is willing to release the child from the timeout if the child begins to cry. The Defendant began educating the children, as he first taught them to count to ten and the first half of the alphabet. However, on three consecutive occasions, the children began forgetting the skills the Defendant taught them after they returned from their stays with the Plaintiff. The Defendant then confronted the Plaintiff concerning her educating the children and continuing the lessons he was teaching them. The Plaintiff began educating the children at that time as well and she taught them the second half of the alphabet. As such, these two factors weigh slightly in the Defendant's favor, as he instills more organization and discipline in the children.

The eleventh factor is "[t]he proximity of the residences of the parties." 23 Pa.C.S.A. § 5328(a)(11). The parties in this case live a significant distance from each other as the Plaintiff resides in Hanover, York County, Pennsylvania, and the Defendant resides in Hillsville, Lawrence County, Pennsylvania. This provides the major conflict between the parties as the distance makes it necessary that one party have primary physical custody of the children during the school year so they can attend class. This factor also limits the partial custody of the other party not awarded with primary physical custody during the school year to partial custody on weekends and holidays. The Court

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

14

ordered the parties to submit a mutually agreeable partial custody plan for the Plaintiff concerning summer and holidays, as the parties would know their schedules best. If they could not agree to a partial custody schedule, the parties were to submit their proposed schedules no later than May 15, 2014. The Court also emphasized its desire for the proposed partial custody schedules to exhibit substantial partial custody rights to the Plaintiff, including a provision for her to have partial custody for the period of time immediately preceding the effective date of that Order. The Court ordered this to ensure that the children would remain in the physical custody of the Plaintiff for as much time as possible.

The twelfth factor for the Court to consider is "[e]ach party's availability to care for the child or ability to make appropriate child-care arrangements." 23 Pa.C.S.A. § 5328(a)(12). The testimony provided to the Court indicates that both parties have the ability to care for and make child-care arrangements for the children. However, the Plaintiff has to drive 20 minutes to take the children to her mother's residence for child care while the children can remain at their home when living with the Defendant as his fiancée is there to care for them. The Defendant's mother is available to care for the children as well. Moreover, the Plaintiff's current work schedule would not provide her with much time to spend with the children when school commences as she works from 2:00 p.m. to 10:00 p.m. and the children would start class in the morning at approximately 8:00 a.m. or 9:00 a.m. and would leave school at approximately 3:00 p.m. Conversely, the Defendant works shifts and would be home more frequently when the children are home from school. As a result, this factor slightly favors the Defendant as he would be home at the same time as the children more often during the school year

and the children could remain at home when the Defendant is working as his fiancée could provide child care during that time.

Factors 13 through 16 are not dispositive in this case as there seems to be very little conflict between the parties, there is no significant history of drug or alcohol abuse and the mental and physical conditions of the parties and members of their households seems to be fine. There is no indication that any of those factors weigh heavily in favor of one party or the other.

After carefully reviewing all of the evidence and examining all of the relevant factors, the Court finds that both parties are capable of providing for the well-being of their children. However, the impending start of the school year in the Fall of 2014 and the distance between the parties' residences renders the current custody arrangement of alternating one month visitation periods no longer feasible. The Court is being called upon to submit a difficult decision as both parties demonstrate good parenting skills and each have encouraged a strong relationship between the children and the other parent. The children would be well served by either parent having primary custody. Hence, the Court had to strictly examine the factors provided by 23 Pa.C.S.A. § 5328(a) to render its decision.

The child custody factors present in 23 Pa.C.S.A. § 5328(a) weigh slightly in favor of the Defendant. The testimony indicates that he provides a more structured and disciplined life for the children. Moreover, the Defendant seems to place more of an emphasis on education, as he was the parent who began teaching the children about the alphabet and counting to ten. At that time, it appeared to the Defendant that the children were forgetting the lessons they were learning at the Defendant's house because the

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

Plaintiff was not continuing the educating process. After seeing this repeat for three consecutive occasions, he then encouraged the Plaintiff to do the same. It must be noted that the Plaintiff followed suit and also began educating the children by teaching them the second half of the alphabet, instructing them on colors and shapes and utilizing a tablet computer to educate them as well.

Furthermore, the Defendant has another daughter, A.D., who is the half-sibling of the children. Even though A.D. was not born until after the marriage between the parties was dissolved, the children have developed an indelible bond with her when living with the Defendant. Pennsylvania has a strong policy against separating siblings and this Court must take that into account when rendering its decision. It is important to state that this policy is less compelling in the current case as the siblings were not reared together during the marriage and their relationship was cultivated during the times in which the Defendant received partial custody of the children. However, the Court is still required to weigh that factor in favor of the Defendant. The Plaintiff asserts that the Court improperly found a relationship among the half-siblings, but the Court is convinced that a strong bond exists among them. The Defendant explained that the children have a very strong relationship with A.D., as they often want to help care for her. According to the Defendant, the children play with A.D. and attempt to teach her shapes and colors. The Plaintiff also testified that the children often speak about A.D. when they returned from their time with the Defendant. Hence, this factor clearly weighs in favor of the Defendant.

Additionally, the Defendant can spend more time with the children during the school year, as he works shifts and will be home more often with the children when they

53RD
JUDICIAL
DISTRICT

LWRENCE COUNTY
PENNSYLVANIA

17

return home from school. On the other hand, the Plaintiff works from 2:00 p.m. to 10:00 p.m., which indicates that she would not be able to spend the same amount of time with the children after school. The Court notes that providing primary physical custody to the Defendant during the school year will institute more stability to the children as they will be able to return directly home after school because the Defendant's fiancée, Ms. S███████, will be at home to provide child care until the Defendant returns home from work. The Defendant's mother, who lives in the Mohawk School District, is also available to care for the children.

Hence, the Court granted the Defendant's Petition For Modification Of Custody Order and awarded joint legal custody to both parties and primary physical custody to the Defendant during the school year commencing in the Fall of 2014. Until that time, the parties are to continue sharing primary physical custody on a monthly basis in the same manner as they are currently doing so.

The Plaintiff contends that the Court failed to consider certain factors in its decision such as the parties' willingness to encourage a continuing relationship between the children and the other parent, failing to properly consider safety concerns and failing to consider the Defendant's lack of parental duties. The Court notes that it provided an extensive analysis and examples of the parties encouraging the children to have a continuing relationship with the other party. That factor is not determinative in this case as both parties have encouraged continuing relationships between the children and the other parent in a similar manner. Further exhausting this issue would not provide a different conclusion. Moreover, the Court does not believe that there are safety concerns with awarding primary physical custody to the Defendant during the school

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

18

year as the previously mentioned incidents occurred several years ago and there is no indication that the Defendant has a propensity to act in that manner. The Plaintiff also stated that she is not concerned with the safety of the children when they are in the custody of the Defendant. Again, this issue fails to warrant further consideration as it is not determinative in this case.

The Plaintiff asserts that the Court failed to consider the Defendant's lack of parental duties. However, the record does not indicate that the Defendant failed to perform parental duties. In fact, the record supports the opposite conclusion as he is willing and able to care for the children whenever they are with him and he is not working. The only testimony concerning any type of disparity among the parties in assuming the parental duties is when they were married and the Plaintiff assumed 70 percent of the parental duties while the Defendant was fulfilling his responsibilities as a member of the military. The Court finds no reason to weigh that factor against the Defendant as he was earning money to provide for his family while the Plaintiff was home to care for the children. As such, that factor is not determinative in this matter as well. Therefore, the Court considered these factors in rendering its decision, but those factors were not decisive in this case.

For the reasons set forth in this Opinion, the Plaintiff's Appeal should be denied in its entirety.

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINA

2014 APR -2 A 9: 48          19

HELEN I. MORGAN
PRO AND CLERK