**C.R.F., III, Appellant**

v.

**S.E.F, Appellee.**

Superior Court of Pennsylvania.

Argued March 27, 2012.
Filed May 25, 2012.

Peter V. Marcoline, III, Washington, for appellant.

Lane M. Turturice, Washington, for appellee.

BEFORE: DONOHUE, LAZARUS and OTT, JJ.

OPINION BY DONOHUE, J.:

C.R.F., III ("Father") appeals from the order of court granting S.E.F. ("Mother") primary physical custody of their two children and permitting Mother to relocate with the children to Somerset County. Mother's Petition to Modify Custody and for Relocation was filed on July 6, 2010, before the effective date of the new Child Custody Act, 23 Pa.C.S.A. § 5321 *et seq.* ("the Act"). However, the hearing on Mother's request commenced on April 7, 2011, after the effective date. We conclude that where the evidentiary proceeding commences on or after the effective date of the Act, the provisions of the Act apply even if the request or petition was filed prior to the effective date. Because the trial court failed to apply the appropriate law, we vacate the order and remand.

The trial court succinctly summarized the relevant history of this case as follows:

The parties are parents of two minor children [N.F.] (d.o.b. 4/10/06) and [C.F.], (d.o.b. 4/16/10). [N.F.] was born prior to the parties [sic] marriage, but is the biological child of both parties. The parties were married on June 16, 2007 in Washington, Pennsylvania. On or about September 18, 2008, [ ] Father filed a [d]ivorce [c]omplaint. Upon receiving notice of the divorce complaint, on September 26, 2008, [Mother] . . . moved out of the marital residence with [N.F.] and lived in Myersdale, [Somerset County,] Pennsylvania with her immediate family. A [c]ustody [c]onsent order was entered on October 16, 2008 giving the parties joint legal custody and 50–50 physical custody of [N.F.]. [No further custody proceedings occurred.]

The parties reconciled in November of 2008, but [ ] Father never withdrew his [d]ivorce [c]omplaint. On April 16, 2010, their second child [C.F.] was born, but by July 7, 2010[,] Father amended his divorce [c]omplaint to include [C.F.] in the custody count. The marriage has deteriorated further and now apparently is no longer salvageable. On July 6, 2010, Mother filed a[p]etition to [m]odify [c]ustody and for [r]elocation. Another [i]nterim [c]onsent [o]rder was entered on September 28, 2010, giving Mother partial physical custody and scheduling a relocation hearing. Ultimately, after the hearing [on April 7, 2011] an [o]rder was entered . . . on June 16, 2011 granting Mother's petition for relocation and awarding primary custody. Mother's request for permission to relocate commenced prior to the effective date of 23 Pa.C.S.A. § 5337, which essentially codified the relocation factors outlined in the case of *Gruber v. Gruber*, 400 Pa.Super. 174, 5834 [583] A.2d 434 (Pa.Super.1990), and its progeny.

Trial Court Opinion, 9/13/11, at 1–2 (emphasis in the original).

This appeal followed, in which Father raises the following two questions for our review:

1.  Did the [l]ower [c]ourt err by granting [Mother] permission to relocate to Myersdale, Somerset County, Pennsylvania, when a consideration of the evidence and relocation factors did not support such a decision?

2.  Did the [l]ower [c]ourt err in granting Mother primary physical custody of the minor children when the evidence and custody factors did not support such a finding?

Appellant's Brief at 9. Our scope and standard of review are as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.D. v. M.A.B.,* 989 A.2d 32, 35–36 (Pa.Super.2010) (internal citations omitted).

At the heart of the issues raised by Father is the question of whether the trial court erred in its application of the law governing requests for relocation and modification of custodial agreements. Thus, as a preliminary matter, we consider whether the trial court erred in its determination that the provisions of the Act do not apply to the present case.[1] For the following reasons, we conclude that this decision was in error.

The Act became effective on January 24, 2011. *See* 23 Pa.C.S.A. § 5321 Credits (stating the effective date of the new Custody Act is January 24, 2011). In drafting this new law, the Legislature intended that "[a] *proceeding* under the [prior custody act] which was commenced before the effective date of this section shall be governed by the law in effect at the time the proceeding was initiated." 2010 Pa. Legis. Serv. Act 2010–112 (H.B.1639) (emphasis added). In *E.D. v. M.P.,* 33 A.3d 73 (Pa.Super.2011), this Court considered the meaning of the word "proceeding" as used in this statute:

> This latter directive is susceptible to at least two interpretations, depending upon the meaning assigned to the term 'proceeding.' If a 'proceeding' refers to the entirety of a custody action, *i.e.,* from the initial filing of a request for custody and including all subsequently decided issues (e.g., requests for relocation, modification, and enforcement), then the directive would require the application of the provisions of the former Child Custody Act [23 Pa.C.S.A. §§ 5301–5315, *repealed* ] for any custody case filed prior to January 24, 2011. If, on the other hand, a 'proceeding' is distinguished from a custody 'action,' such that various 'proceedings' (*e.g.,* for relo-

---

1.  In his appellate brief, Father alleges that "[t]he parties agreed to apply the new [c]ustody and [r]elocation standards to this case." Appellant's Brief at 20. Apparently, Mother does not agree with this assertion, as she grounds her arguments on appeal in the law as it existed prior to the Act. She did the same in her brief in support of her petition to relocate, which was submitted to the trial court following the conclusion of the hearing. *See* Brief in Support of Petition to Relocate, 5/27/11. Moreover, our review of the record has revealed no such agreement.

cation, modification, and enforcement) take place within the context of a custody 'action,' then all such proceedings initiated after January 24, 2011 would be governed by the new Act—even if the original custody action was filed prior to its January 24, 2011 effective date. We note that the new Act does not expressly define the term 'proceeding.' To the contrary, it appears to use the terms 'action,' 'proceeding,' and 'matter' interchangeably. *See, e.g.,* 23 Pa.C.S.A. § 5323 ('an action under this chapter'); § 5327 ('any action regarding the custody of the child'); § 5331 ('a contested custody proceeding'); § 5335 ('the custody proceedings'); § 5321 ('any child custody matter'); § 5340 ('a child custody matter').

The object of statutory interpretation is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S.A § 1921. We must assume that the legislature did not intend an absurd or unreasonable result, and in this regard we may consider the practical consequences of a particular interpretation. *Id.* at § 1922; *Commonwealth v. Daikatos* [*Diakatos*], 708 A.2d 510, 512 (Pa.Super.1998). With these principles in mind, in our view the legislature intended to distinguish between an 'action' for custody and subsequent 'proceedings' in connection therewith. This interpretation provides for the broadest possible application of the procedures and legal standards in the new Act. Under the alternative interpretation, the provisions of the old Act (repealed under section 2 of the new Act) would continue to apply to all aspects of every custody action filed before January 24, 2011—and would continue to apply in those actions for many years into

the future, an absurd and unreasonable result. Because in our view the legislature intended for the provisions of the new Act to apply to all matters relating to child custody after the Act's effective date, the new Act applies to all custody proceedings commenced after January 24, 2011.

*Id.* at 76–78.

As this excerpt makes clear, our focus in *E.D.* was to determine what the Legislature intended by use of the word "proceeding". In *E.D.,* this Court recognized that our Legislature intended the terms of the Act to have the broadest impact possible; thus, we distinguished between the filing of the initial action and the discrete proceedings that occur in connection with the overarching custody action. In *E.D.,* both the father's petition for relocation and the mother's request for modification were filed after the effective date of the Act. Thus, the impact of the date of the commencement of the hearing on the applicability of the Act was not an issue in *E.D.,* since any hearing would necessarily take place after the effective date.[2]

The present case is in a different procedural posture because Mother's petition was filed on July 6, 2010, prior to the effective date of the Act, but the hearing commenced (and concluded) on April 7, 2011, after the effective date. As a result, we must again examine the meaning of the word "proceeding" in the Act to determine whether the Legislature intended the Act to apply to custody cases initiated prior to the effective date but where the evidentiary hearing in the case commences after the effective date.

Black's Law Dictionary provides the following definitions for "proceeding:"

---

**2.** This was also the procedural posture in *C.M.K. v. K.E.M.,* 45 A.3d 417 (Pa.Super.2012), where we followed *E.D.* and con-

cluded that the "principles and directives contained in" the Act applied. *Id.* at 441.

*Proceeding.* **1.** The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. **2.** Any procedural means for seeking redress from a tribunal or agency. **3.** An act or step that is part of a larger action. **4.** The business conducted by a court or other official body; a hearing. **5.** *Bankruptcy.* A particular dispute or matter arising within a pending case—as opposed to the case as a whole.

BLACK'S LAW DICTIONARY (9th ed.2009). While the alternative definitions vary somewhat, they each lead to the clear conclusion that a hearing is a proceeding. Indeed, there is likely not a member of the bench or the bar who would suggest that a hearing, in common parlance, is not a "proceeding."

Moreover, in *E.D.*, this Court opted for the broadest possible application of the Act to effectuate the Legislature's intent to have the provisions of the Act applied to all matters relating to child custody after the effective date. *E.D.*, 33 A.3d at 78. As noted, there is no doubt that by definition, a hearing is a proceeding. Further, within the specific context of Section 5337(h) of the Act, it is important to note that its provisions impact the trial court's analysis of the evidence that is adduced at a relocation hearing in order to determine whether relocation is in the best interest of the child.[3] Thus, applying the factors delineated in Section 5337(h) to hearings convened after the effective date is the logical reading of the Act since these factors are implicated for the first time at the hearing scheduled to decide the request for relocation.[4]

█ Accordingly, we conclude that if the evidentiary proceeding commences on or after the effective date of the Act, the provisions of the Act apply even if the request or petition for relief was filed prior to the effective date. Under this scenario, it is the date of the commencement of the hearing that determines whether the Act applies, not the date the petition or complaint was filed. This conclusion allows for the "broadest possible application of the procedures and legal standards in the new Act[,]" *E.D.*, 33 A.3d at 77, thereby furthering the intent of the Legislature.

█ As the relocation and custody modification hearing in the case at bar commenced nearly three months after the Act became effective, the provisions of the Act applied. Our review of the record, however, reveals that the trial court did not apply the terms of Section 5337(h) of the Act to this request for relocation.[5]

**3.** Section 5337 states: "In determining whether to grant a proposed relocation, the court shall consider the following factors...." 23 Pa.C.S.A. § 5337(h). See *infra* footnote 6 (full text of Section 5337(h)).

**4.** We also note that Section 5328 (relating to awards of custody) and Section 5338 (relating to modification of custody orders) similarly set forth factors to be considered by the court when analyzing the evidence proffered to support these claims. *See* 23 Pa.C.S.A. § 5328, 5338.

**5.** 23 Pa.C.S.A. § 5337(h) provides:

In determining whether to grant a proposed relocation, the court shall consider the fol-lowing factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party

Rather, the trial court applied the *Gruber* factors in rendering its decision regarding relocation. *See* Trial Court Opinion, 9/13/11, at 3–5 ("Based upon the factors outlined in *Gruber v. Gruber* ... this [c]ourt made a determination in the best interests of the children."). We recognize that the *Gruber* test has been incorporated into the ten factors enumerated in Section 5337(h); specifically, they are embodied in the third, sixth, seventh and eighth factors. The trial court, however, did not address the first, second, fourth, fifth, ninth and tenth factors set forth in Section 5337(h). Consequently, we do not reach the merits of Father's challenge to the trial court's ultimate decision because we have concluded that the terms of Section 5337(h) apply and that the trial court did not base its decision on an analysis of the factors contained therein. We vacate the trial court's order and remand for the trial court to render a decision applying the provisions of Section 5337(h) of the Act.

Order vacated. Case remanded. Jurisdiction relinquished.

and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
(8) The reasons and motivation of each party for seeking or opposing the relocation.
(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.
(10) Any other factor affecting the best interest of the child.
23 Pa.C.S.A. § 5337(h).