J-A18027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.S. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| R.A.L. | | |
| Appellee | | No. 203 MDA 2014 |

Appeal from the Order Entered December 11, 2013
In the Court of Common Pleas of Luzerne County
Civil Division at No.: 13285 of 2010

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                    **FILED SEPTEMBER 26, 2014**

L.S. ("Mother") appeals the December 11, 2013 order that awarded Mother and R.A.L. ("Father") shared legal custody of Z.L. ("Child") (born in August 2009), awarded primary physical custody of Child to Father, and awarded partial physical custody of Child to Mother.  The trial court also denied Mother's petition for relocation with Child to New Hampshire.  We affirm.

Mother and Father were married in June 2008, and divorced in June 2012.  In addition to Child, each parent has two children from prior relationships.  Mother and Father both live in Kingston, Luzerne County. Father works as a rabbi in the area.  Mother is unemployed.

After separation, Father filed a petition for an expedited custody hearing, alleging that Mother had not allowed contact between Father and

Child. Pending a custody conference, on October 29, 2010, the trial court ordered that Father was allowed custody of Child in the marital residence on Monday, Wednesday, and Friday mornings. Father alleged, and Mother later admitted, that Mother monitored Father's custodial time with Child in the marital residence by placing video cameras in the home. Notes of Testimony ("N.T."), 12/4/2012, at 63-64.

On March 25, 2011, the trial court entered a custody order that awarded shared legal custody of Child, granted Mother primary physical custody, and provided Father partial physical custody every other weekend and every Wednesday morning. Following Father's first overnight custody of Child, Mother filed a petition for a hearing in which she alleged that Child returned to Mother with a bruise on her neck and a rash on her buttocks. Mother further alleged that the rash was caused by Father's neglect.

On June 7, 2011, Mother filed a petition and notice for relocation, seeking to relocate with Child to Sunapee, New Hampshire. On June 30, 2011, Father filed a counter-affidavit objecting to the proposed relocation.

On June 7, 2011, Mother also filed a petition for enforcement, in which she sought a contempt finding against Father for failing to allow her phone contact with Child, for failing to communicate with Mother about issues involving Child, and for failing to provide Mother with information when Father took Child to visit Father's family in New Jersey. Father denied these allegations and asserted that Mother was interfering with his custodial periods.

On July 19, 2011, the trial court selected Robert Tanenbaum, Ph.D., to perform a psychological evaluation on each parent and a comprehensive custody evaluation. Dr. Tanenbaum began the evaluations on August 11, 2011, and completed the evaluations on June 17, 2012. Dr. Tanenbaum issued a report on June 19, 2012.

On October 4, 2011, Mother filed another petition for enforcement, raising substantially the same issues as the first petition. On the same day, Mother filed a petition to modify the custody order, asserting that Father was unable to care for Child during his period of custody and had to use child care. Mother sought custody of Child during times when Father would be unable to care for Child. Mother also sought a restriction on the number of trips Father could make with Child to New Jersey, where his parents resided, and Vermont, where his other children resided. Mother also requested a provision requiring Father to introduce any significant other to Mother before introducing that other person to Child. Mother further alleged that Father was not feeding Child a kosher diet. Mother requested that Father inform Mother what Child was eating because Child allegedly was experiencing stomach problems and rashes.

On October 27, 2011, Father filed a petition for contempt, alleging that Mother refused to allow Father his custodial time on three days because Child assertedly was sick. Father averred that Mother took Child to religious services and daycare on those days, demonstrating that Child was not too sick for Father to exercise custody. Father also filed a petition to modify the

custody order, seeking to enlarge his custodial periods. Father filed an additional petition for contempt, alleging that Mother had refused Father three more custodial periods with only one make-up weekend scheduled.

In response to various petitions, the trial court held another custody hearing in December 2011 and filed another custody order on April 12, 2012. That order extended Father's physical custody to every other Friday through Monday and every Wednesday overnight. The court also denied Mother's petitions for enforcement.

On February 9, 2012, Mother filed a petition for contempt in which she alleged that Father refused to communicate with Mother regarding Child's rashes, stomach issues, and hygiene. Mother also claimed that Father did not respond to her email communication regarding Child's medical issues, Child's clothing that was not returned to Mother's house, medication given to Child, and Father's alleged refusal to cross a street with Child within the designated crosswalk. Mother asserted that Child chipped a tooth while in Father's custody. Mother also alleged that Father was not allowing Mother to have telephone contact with Child. On March 1, 2012, Father filed another contempt petition, alleging that Mother refused to allow Father to exercise custody of Child. On March 5, 2012, the court entered an order granting Father make-up periods of custody and dismissed the petitions for contempt without prejudice.

On March 23, 2012, Mother filed again for modification of the custody order. Mother alleged that Father was not available to supervise Child

during his custody periods, that Father ignored Child's medical concerns, that Father took Child with him to "adult social functions," and that Father was not communicating with Mother. On April 13, 2012, Father filed a petition for contempt alleging that Mother refused to allow Father custody of Child during Passover and that Mother was not cooperating with the custody evaluation. On April 25, 2012, Father filed another petition for contempt alleging that Mother shouted derogatory statements about Father in the presence of Child and others and that Mother did not permit Father custody of Child. On May 10, 2012, the trial court found Mother in contempt for making derogatory remarks in front of Child and for not permitting Father custody. The court did not find Mother in contempt for the issues raised in Father's April 13 petition.

On June 29, 2012, Father filed a petition for primary physical custody of Child, seeking to modify the April 12, 2012 order. On that same day, Father also filed a petition for contempt, alleging that Mother would not schedule one of his make-up periods of custody. On July 30, 2012, Mother filed a petition for contempt alleging that Father did not allow Mother to have telephone contact with Child, that Father was not communicating information, including medical concerns, about Child to Mother, that Father had enrolled Child in pre-school without Mother's consent, and that Father had not consented to Mother's request to enroll Child in pre-school.

The trial court held hearings on the petitions on September 19, 2012, October 3, 2012, October 25, 2012, and December 4, 2012. At the

hearings, the trial court heard testimony from Father, Mother, Dr. Tanenbaum, Luzerne County Children and Youth intake supervisor John Kosloski, Child's pediatrician Michael Harris, Jewish Community Center Executive Director Richard Evans, and United Hebrew Institute secretary Mary Lee Conway.

On February 11, 2013, Mother filed another petition for contempt alleging that Father was not permitting telephone contact with Child and that Father was ignoring email communication from Mother. On April 22, 2013, Mother filed an emergency petition for contempt, alleging that an unknown male was living with Father and that Father refused to provide information to Mother about that person. On April 24, 2013, Mother withdrew both her February 11 and April 22 petitions.

On September 25, 2013, Father filed a petition for contempt alleging that Mother refused Father his custodial time, that Mother informed Child's pre-school that Father could not pick Child up from school despite a court order allowing such, that Mother told Child that Father was not to spend time with Child and told Child that Father was not caring for Child properly, and that Mother sends Father harassing emails. On September 26, 2013, Mother filed a petition for contempt alleging that Father permitted Child to sleep outside when it was too cold to do so, that Father did not provide proper hygienic care for Child, and that Father refused to communicate with Mother. On October 16, 2013, the trial court found Mother in contempt for

refusing Father his custodial time. The court also denied Mother's petition for contempt.

On October 21, 2013, Father filed a petition for contempt. He alleged that Mother took Child to the emergency room, but refused to provide Father with any information about the nature of the medical problem. Father averred that Mother refused Father contact with Child during her stay at the hospital and that Mother had hospital security ask Father to leave. On November 19, 2013, Father filed a petition for emergency relief alleging that the parties could not agree to custody for the Thanksgiving holiday. On November 20, 2013, the court issued an order for Thanksgiving custody and an order finding Mother in contempt.

On December 11, 2013, based upon the four-day custody hearing in 2012, the trial court issued an opinion and order modifying the custody order, and awarding primary physical custody to Father and partial physical custody to Mother every other Friday through Monday and every Wednesday overnight. The trial court also denied Mother's petition for relocation.

Mother filed a timely notice of appeal on January 10, 2014. Mother also filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(i) and (b) on the same date. On February 4, 2014, the trial court filed a statement pursuant to Pa.R.A.P. 1925(a) adopting its December 11, 2013 opinion and order.

On appeal, Mother raises three questions for our review:

1. Whether the Trial Court committed an error of law and/or abused its discretion in reversing the custody schedule of the parties considering the expert testimony of record and many favorable findings as they relate to the then existing physical custody arrangement with Mother?

2. Whether the Trial Court committed an error of law and/or abused its discretion in failing to consider the parental duties performed by Mother on behalf of the Child and/or failing to give sufficient weighted consideration to the Child's sibling relationships as they exist in Mother's household?

3. Whether the Trial Court committed an error of law and/or abused its discretion in determining that inter-parental conflict was a reasonable basis to transfer primary physical custody to Father?

Mother's Brief at 4.

Initially, we observe that, because the hearings were held in 2012, the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321 *et seq.*, is applicable to the instant case. ***C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the January 24, 2011 effective date of the Act, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law,

- 8 -

or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

We have stated:

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013). In determining the child's best interests, the trial court must consider the following sixteen factors:

### § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[1]  *See also E.D. v. M.P.*, 33 A.3d 73, 79-80 (Pa. Super. 2011) (holding that "best interests of the child" analysis requires consideration of all of the section 5328(a) factors).[2]

In its December 11, 2013 opinion and order, the trial court addressed all of the factors enumerated in 23 Pa.C.S.A. § 5328, and detailed the manner in which it arrived at its decision.  The trial court thoroughly discussed all of the factors individually, including Child's relationship with both Mother's and Father's other children and the inter-parental conflict that existed.

Mother first argues that the custody evaluator's testimony did not support the change in custody.  Mother contends that, because the custody evaluator did not recommend a switch in primary custody, the court acted unreasonably in ordering the change.  Mother's Brief at 8-11.  Mother also argues that the court did not properly weigh certain of the custody factors, including Mother's provision of Child's daily needs and Child's relationship with Mother's two other children.  Mother's Brief at 12-14.  Finally, Mother

_____

[1]  Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services).

[2]  Mother did not appeal the trial court's decision to deny her petition to relocate.  Therefore, we do not discuss the trial court's relocation decision or consideration of the relocation factors pursuant to 23 Pa.C.S.A. § 5337(h).

argues that the court erred in premising its custody change upon the conflict between the parties. Mother's Brief at 15-16.

Mother first challenges the trial court's consideration of Dr. Tanenbaum's testimony. While the trial court is not required to accept the conclusions of an expert witness in a child custody case, it must at least consider them. If the trial court chooses not to follow the expert's recommendations, its decision must be based on competent evidence of record. **See King v. King**, 889 A.2d 630, 632 (Pa. 2005); **Nomland v. Nomland**, 813 A.2d 850, 854 (Pa. Super. 2002).

The custody evaluator's testimony is not as clear-cut as Mother has alleged. In his report, Dr. Tanenbaum recognized that the level of conflict between the parties was high. N.T., 9/19/2012, at 67. The conflict was so great that Dr. Tanenbaum considered the option of reversing the custody schedule to reduce Child's exposure to Mother's "distress." **Id.** at 67-68. However, Dr. Tanenbaum rejected that recommendation because "[i]t was not what [F]ather was seeking at the time evaluation began."[3] **Id.** at 68. Instead, Dr. Tanenbaum recommended keeping the custody schedule the same, but with the option of Father receiving more time if Mother's allegations against Father continued. **Id.** However, at the time of the hearing, Dr. Tanenbaum testified that, if Mother's allegations against Father

_____

[3] Father filed his petition for primary custody shortly after the custody evaluation was completed.

- 12 -

were found to be "without merit," it would be in Child's best interest for Father to have primary custody. *Id.* at 150.

Dr. Tanenbaum testified that Child was at risk of being alienated from Father based upon Mother's actions, including Mother's practice of peppering the local children and youth agency with unsubstantiated reports of abuse. *Id.* at 47-51. Dr. Tanenbaum stated that Father was more likely to encourage and permit contact between Mother and Child. *Id.* at 145. In this case, the trial court considered Dr. Tanenbaum's testimony and recommendations as required, as the court reviewed all competent evidence of record to arrive at its decision. We find no error or abuse of discretion.

Mother next challenges the weight the trial court assigned to various factors. The trial court considered all factors, including Mother's ability to provide and care for Child and Child's relationship with her half-siblings. Trial Court Opinion and Order ("T.C.O."), 12/11/2013, at 4-5. The trial court heard testimony that Child has a good relationship with all of her half-siblings. N.T., 9/19/2012, at 188-90; N.T., 10/25/2012, at 135. The court also heard testimony that Mother is available to care for Child as a stay-at-home parent while Father has work obligations in the evenings and on weekends. N.T., 10/25/2012, at 141-46. However, the trial court focused upon the fact that Mother's actions were causing conflict and increasing Child's risk for alienation, and the fact that Father was more likely to encourage contact between Child and Mother while Mother was more likely to limit Father's access to Child. T.C.O. at 3, 5. Father testified about

Mother's actions that interfered with or limited his custodial time with Child. N.T., 9/19/2012, at 192-98, 200, 202; N.T., 10/3/2012, at 64, 138-39. The trial court determined that it was required to change physical custody in order to minimize the conflict and its repercussions for Child. *Id.* at 6-7. The record amply supports these conclusions, and we defer to the trial court on issues of weight of the evidence. *See C.R.F.*, 45 A.3d at 443.

Finally, the record supports the trial court's finding that there is a high level of conflict between the parties. T.C.O. at 6. Citing Dr. Tanenbaum's report, the trial court stated that Child was "caught in the middle of intense and unrelenting inter-parental conflicts." *Id.* The trial court appropriately considered this among the other factors in providing a custody arrangement calculated to suit Child's best interests. Based upon our review of the record, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/26/2014

- 14 -