J-A30010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| G.F.-K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| F.X.M. | |
| Appellee | No. 1489 EDA 2014 |

Appeal from the Order April 14, 2014
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): 2011-34372

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 17, 2014**

G.F.-K. ("Mother") appeals from the order of the Court of Common Pleas of Montgomery County entered on April 14, 2014, which provided, *inter alia*, that Mother and F.X.M. (Father) would share legal and physical custody of their sons, J.M., born in 2006, and W.M., born in 2008.  After careful review, we affirm.

On December 14, 2011, Mother filed a complaint seeking shared legal and physical custody of the children.  The parties entered into a temporary interim agreed order on February 2, 2012, which provided for shared legal custody, and established a schedule whereby each parent would have physical custody every other week.  On December 14, 2012, the trial court

_____

[*] Retired Senior Judge assigned to the Superior Court.

held a hearing on Mother's custody complaint, but Father and his counsel failed to appear. The court then issued an order granting shared legal custody to the parties, and primary physical custody to Mother, with Father having primary physical custody every other weekend on Saturday from 10:00 a.m. until 8:00 p.m., and Sunday from 8:00 a.m. until 6:00 p.m. Father also had primary physical custody every Wednesday from after school until 8:00 p.m.

Father filed an emergency petition for rehearing on December 20, 2012, requesting a protracted custody hearing. He averred that he did not appear at the December 14, 2012 hearing because prior counsel informed him that he need not attend, and that prior counsel would appear on his behalf. However, prior counsel failed to appear.

On January 9, 2013, the court ordered an expedited custody conciliation conference, and on November 25, 2013 and January 22, 2014, the court held hearings on Father's emergency petition for rehearing. At the hearings, Mother expressed her concerns that the week on/week off schedule would separate the children from their older brother P.F., who is Mother's son from a previous relationship. Mother also testified about her concerns regarding the presence of mold and lack of cleanliness in Father's house. By order filed April 14, 2014, the trial court granted shared legal custody to the parties, established a comprehensive vacation and holiday schedule, and included the following provision:

Mother and Father will alternate physical custody of the children on a weekly basis. Within seven (7) days of the date of this Order, Father shall permit Mother to walk through Father's residence, as previously discussed by the parents. Mother is to notify Father within forty-eight (48) hours of the walk through as to whether or not, based on her walk through, she is requesting that Father have his residence inspected for mold by a professional inspector. If notified by Mother within forty-eight (48) hours, Father shall have the residence inspected for mold. If the inspection indicates that there is mold in the residence, Father is to comply with all remedial measures to eliminate the mold forthwith.

Once the above paragraph has been complied with, the parents will begin shared physical custody of the children on Sunday at 6:00 p.m., and will continue to alternate custody of the children every Sunday thereafter.

Order, 4/11/14, at 9.

On appeal, Mother raises the following issues for our review:

1. Were [sic] Mother's concise statement of [the errors] complained of on appeal inadequate to merit appellate review resulting in Mother's waiving any alleged error by the trial court?

2. Did the trial court abuse its discretion and commit [sic] an error of law by awarding shared physical custody of the minor children to Father despite the fact that the record clearly reflected that it was not in the best interests of the children to do so?

3. Is [sic] the trial court's analysis and findings related to factors three, four, six, and ten of 23 Pa.C.S. § 5328 sustainable and supported by competent evidence of record?

Appellant's Brief, at 3.[1]

_____

[1] We have rearranged the order in which Mother raised the issues in her brief.

On May 13, 2014, Mother filed her statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), asserting that the court abused its discretion and committed an error of law by: (1) awarding shared physical custody to Father when it was not in the best interests of the children; (2) making unsustainable findings with respect to six of the factors to consider when awarding custody set forth in 23 Pa.C.S. § 5328(a); and (3) awarding shared physical custody when Father failed to carry his burden to show that modification was in the children's best interests.

In its Rule 1925(a) opinion, the trial court deemed Mother's issues waived for vagueness. We disagree. A challenge to a ruling with respect to specific subsections of section 5328(a) "identifies each ruling or error the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). Because the factors set forth in section 5328(a) relate to the determination of the best interest of the child, an allegation that a party failed to establish a child's best interest, or that a court's order is not in the best interest of a child, is sufficiently detailed when specific subsections of section 5328(a) are challenged. Where, as in this case, the trial court order itself addresses the specific subsections of the Act, we are able to engage in appellate review without remanding the matter to the trial court. Accordingly, we address Mother's remaining issues.

In custody modification cases, our scope and standard of review are as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Further, this Court has stated:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

Under the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, the paramount concern is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the "best interest of the child." *See* 23 Pa.C.S. § 5338.

Mother asserts that the trial court abused its discretion and erred as a matter of law by awarding shared physical custody to Father because the

record indicates that it was not in the children's best interests to do so. In support of this contention, she argues that she is the parent who signs the children up for activities and school events, and that when Father attends an activity or takes the children to one, he is usually late. She notes that Father missed a report card conference, did not take the children to the first day of school and failed to take the children to camp orientation. Mother further notes that Father smokes in the same vehicle that he uses to transport the children, and that when their son was five years old and weighed 55 pounds, Father allowed him to ride in the front seat of his vehicle.[2]

As noted above, the question we must answer "is whether the trial court's conclusions are unreasonable as shown by the evidence of record." ***Ketterer***, ***supra***. None of the evidence cited by Mother leads us to believe that it was unreasonable for the court to conclude that shared physical custody of the minor children constituted an abuse of discretion or an error of law.

Section 5328(a) of the Act sets forth sixteen factors that the court shall consider when determining the best interests of a child. Mother argues

---

[2] Mother also argues that since the entry of the court's April 11, 2014 order, Father has not allowed his home to be inspected for mold. We fail to discern how this fact, if true, impacts our review of whether the trial court abused its discretion or committed an error of law by awarding shared physical custody based on the record before it.

that the trial court's findings with respect to four of the factors are not supported by competent evidence of record.

Mother asserts there was insufficient evidence to support the conclusion that she and Father both performed "parental duties . . . on behalf of the child." 23 Pa.C.S. § 5328(a)(3). She notes that the trial court recognized that Mother "has been primarily responsible for the children's school activities, extracurricular activities and doctors' appointments." Trial Court Order, 4/11/14, at 3. The trial court also stated, "Father has missed several school appointments and extracurricular events," *id.*, and, "Father needs to be more proactive about checking his emails [which Mother sends to inform him of school appointments and extracurricular activities] and in utilizing the on-line information available through the children's school district so he can be an active participant in the children's educational development." *Id.*

At the hearing, Father testified that when the children lived with him, he would bathe them at least every other day and make sure their hands were clean. N.T. 11/25/13, at 27-28. He would play outdoors with the children, walk with them in the park, take them to the aquarium, and bring them to the shore. *Id.* at 28. He would do homework with the children, giving special attention to J.M., who was having difficulty with reading and writing. *Id.* at 35.

Father's sister testified that Father attends the children's baseball games, and that while the children were living with Father, they would go

bowling and roller skating, and visit the aquarium and the Philadelphia Zoo. *Id.* at 189. She also testified that Father enlisted the help of her friend, a special education teacher, to assist him helping J.M. with his school work. *Id.* at 190.

This evidence, which the trial court found credible, reasonably supports the conclusion that both parties performed parental duties commensurate with shared physical custody. *See C.R.F.*, *supra*.

Mother next argues that the evidence of record does not support shared physical custody in light of "the need for stability and continuity in the child's education, family life and community life." 23 Pa.C.S. § 5328(a)(4). She again insists that she is the parent who handles most aspects of the children's education. She notes that she lives on a residential street where there are several neighborhood children for her boys to play with. In contrast, she states that father lives on a busy street and that he does not know his neighbors. Mother further avers that when Father had custody of the children on school days, Father needed his mother's help to get the children ready for school and to pick them up.

Father testified that he lives one half-mile from Mother, in the same neighborhood. He further stated that if he had custody during the school week he could take the children to school at 8:30 a.m. and pick them up at 3:20 p.m., after which he would stay home to help them with their homework and cook dinner. N.T. Hearing, 11/25/13, at 182.

Mother's testimony and evidence about Father's lack of involvement in the children's education and extracurricular activities dated from the period when he had extremely limited primary physical custody (daytime every other weekend and one evening after school every week). Accordingly, if the court found Father's testimony to be credible, it reasonably supported the conclusion that awarding shared physical custody to the parents would promote stability and continuity with respect to the children's education, family life and community life.

Mother next asserts that the evidence does not support the court's conclusions with respect to "the child's sibling relationships." 23 Pa.C.S. § 5328(a)(6). As previously noted, P.F., Mother's 11-year-old son from a prior relationship, lives with her. Mother argues that the evidence supports a strong bond between the children and their older half-brother, which would be undermined by separating them.

Mother correctly notes that it is the policy of the Commonwealth that siblings should be raised together barring compelling reasons to the contrary. **Pilon v. Pilon**, 492 A.2d 59 (Pa. Super. 1985). "This factor is not diluted by the fact that the children involved are half-brothers and sisters." **In re Davis**, 465 A.2d 614, 621 (Pa. 1983). Nevertheless, the policy that siblings should be raised together is a consideration in, rather than a determinant of, custody arrangements. **L.F.F. v. P.R.F.**, 828 A.2d 1148 (Pa. Super. 2003).

In support of her position, Mother cites ***Wiskoski v. Wiskoski***, 629 A.2d 996 (Pa. Super. 1993). In that case, the parties married in Rhode Island in February 1988, at which time mother had two young children from a previous marriage. The parties' son was born in October 1988, and the family relocated to Carbon County in 1990. The parties separated in October 1992, and mother returned with the children to Rhode Island. The trial court issued an order providing that during the school year, father would have primary physical custody of the parties' son, who was four years and nine months old, with mother having primary physical custody during the non-school summer months. On appeal, this court reversed, noting that father had offered no reason for separating the children.

The instant case is remarkably different from ***Wiskoski***, where the trial court's order had the effect of separating the child from his half-- siblings, who lived hundreds of miles away, for the entire school year except for one week of Christmas vacation. Here, the order provides that the children and their half-brother, who are being raised in the same neighborhood, will live together every other week.

Further, Father testified that between June and October 2012, while the agreed upon custody order was in effect, Mother allowed P.F. to go to his house when he had physical custody of the children. Father also took P.F. to his parents' house in Ocean City, New Jersey during that period. N.T. Hearing, 11/25/13, at 23-25.

It is clear that the court heard testimony regarding the children's relationship with their half-brother, and it considered the issue when fashioning the week on/week off custody order. We find no abuse of discretion or error of law in its determination that the order promotes the best interests of the children, even though it entails some disruption in their day-to-day contact with their half-brother.

Mother next argues that the trial court's order fails to consider "which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." 23 Pa.C.S. § 5328(a)(10). In support of her argument, Mother points to the same facts that she highlighted in previous portions of her brief, such as Father's failure to attend school conferences and activities, and her concerns about the cleanliness of, and presence of mold in, Father's house.

Nevertheless, the record contains testimony concerning Father's efforts to help the children with their homework and assist J.M. in improving his reading and writing skills; Father's active involvement in the children's lives when they are in his custody; Father's ability to arrange his schedule to drop the children off at school and pick them up; and Father's efforts to make sure that the children and the house were clean when he had shared physical custody. This evidence, which the trial court found credible, reasonably supports the conclusion that both parties are equally likely to attend to the children's needs. *See C.R.F.*, *supra*.

In light of the custody order in this case and our review of the record, it is clear that the sustainable findings of the trial court support the conclusions of law, and therefore, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2014