J-S25042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.G., | : | |
| | : | |
| Appellant | : | No. 2 MDA 2019 |

Appeal from the Order Entered December 5, 2018
in the Court of Common Pleas of Cumberland County
Civil Division at No(s):  NO.062786

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JULY 05, 2019**

C.G. ("Father") appeals from the Order granting the Petition filed by E.R. ("Mother"), a physician-specialist, to allow Mother to relocate to St. Maarten Island with the parties' youngest child, S.G. (a female born in December 2002), so that Mother may accept employment at the American University of the Caribbean School of Medicine ("AUC").[1]  We affirm.

The trial court set forth the following factual background:

_____

[1] We note that this Order continued the existing custody arrangement of shared legal custody, with Mother having primary physical custody and Father having partial physical custody.  The specific custody schedules, however, were changed as a result of the relocation.  We additionally note that this Order did not suspend provisions from an August 14, 2018 Interim Custody Order that encourage, but do not mandate, counseling between S.G. and Father, as well as the presence of another adult at any custodial visits between S.G. and Father, unless and until S.G. decides that the presence of another adult is not necessary.

> [Mother] and [Father] were married [in] December [] 1997, separated in January 2004[,] and divorced in December[] 2007.
>
> The parties have three children, [a male, E.G., born in February 1999; a male, A.G. born in December 2000; and S.G. (collectively, the "Children")]. [E.G.] is emancipated and currently attending college. A.G. will soon turn eighteen (18) and is not a subject of this litigation[,] since the proposed move is [at] the end of May[] 2019[,] when he will be emancipated. Consequently[,] only S.G. is the subject of this request.
>
> After the parties separated[, M]other had primary custody of all Children from January 2004 to the summer of 2012. At that time, [E.G.] went to live with [] [F]ather. A.G. and S.G. continued to live with [M]other.
>
> Since the divorce[,] [M]other has moved several times. The first was a relocation to Cleveland, [Ohio, for] a three[-]year residency in Anatomical Pathology. … The second was to Little Rock, [Arkansas,] for a one[-]year fellowship program in Dermatopathology. The third [] was [for] a job at Greensboro Pathology Associates in Greensboro, [North Carolina]. The next move was from May 201[6] to the present[,] when she took a new job at the Institute of Dermatopathology in Newtown Square, [Pennsylvania]. Her current residence is in Chester Springs, [Pennsylvania].
>
> Father has resided in Mechanicsburg, [Pennsylvania,] during the period after the separation and divorce.

Trial Court Opinion, 12/5/18, at 1.

On February 19, 2018, Mother served Father with a Notice of proposed relocation of S.G. to St. Maarten in January 2019. On February 28, 2018, Father filed a Counter-Affidavit objecting to the relocation. Thereafter, Mother filed a Petition requesting a relocation hearing, which was held over the course of two days, on August 16, 2018 and August 17, 2018.

At the hearing, Mother testified that she does not wish to continue her current employment as a dermapathologist at the Institute for Dermapathology, which she began in May 2016, and which she finds stressful. *See* N.T., 8/16/18, at 7, 22, 28-29, 33. Mother testified that she earns $425,000 per year. *Id.* at 42. She begins work at 8:00 a.m. and works until 5:00 p.m. or 5:30 p.m. *Id.* at 31. During the two months preceding the hearing, Mother was required to work on two Sundays for 4-5 hours. *Id.* at 32. Mother gets home at around 7:30 p.m.; she then eats dinner, recuperates for an hour, and goes to bed. *Id.* At the time of the hearing, and for a few years prior thereto, Mother worked part-time at the AUC in St. Maarten, teaching pathology during five of her six weeks of vacation from her full-time employment. *Id.* at 29, 34-35. Mother testified that she loves teaching at AUC, and that she would prefer to work for AUC over her current employment. *Id.* at 35-36. Mother's position at AUC would require her to teach for an hour and a half each day, and have office hours for five hours per week, with 11 and a half weeks of vacation. *Id.* at 139-42.

Mother testified that she and S.G. have a great relationship, spend a significant amount of time talking, and do many activities together. *Id.* at 64-65.

In St. Maarten, S.G. would attend the Caribbean International Academy ("CIA"), a Canadian preparatory school. *Id.* at 26, 50-51. According to Mother, the CIA website provides that 90% of the school's students go on to

universities in the United States, Canada, Germany, France, Spain, the United Kingdom, and the Netherlands. *Id.* at 74. The school has a diversified student body. *Id.* at 73.

S.G. presently attends Downingtown East High School in the Downingtown School District. *Id.* at 7, 72, 165-68. S.G. testified that St. Maarten "[i]s going to be a better area to live in my opinion because I -– I love exploring. I love adventures, you know, new things. I don't exactly like living here. It's not my – it's not my ideal location." *Id.* at 177. S.G. stated that it is her preference to move to St. Maarten with Mother. *Id.* at 163, 178. S.G. testified that CIA would be a better school for her than the schools in Pennsylvania because it would prepare her for travel or living outside of the United States. *Id.* at 166.

Mother also testified that Father's relationship with S.G. is non-existent. *Id.* at 69, 80. Mother testified that S.G. told her in March 2018 that she is afraid of Father. *Id.* at 45, 92, 94.

S.G. testified that she is very close with Mother, and she has lived with Mother for her entire life. *Id.* at 170-72. S.G. stated that she is afraid of Father because of his bad temper. *Id.* at 174-75. S.G. is willing to attend counseling with Father, but is afraid to be alone with Father without another adult being present. *Id.* at 174, 176-77. S.G. testified that she mainly vacations with Father, and she does not spend much time with him while on vacation. *Id.* at 173. S.G. stated that she is close with A.G., who does not

intend to enroll in a Pennsylvania college. *Id.* at 176. S.G. also testified that she sees E.G. every several months, since he is attending Bloomsberg University. *Id.* at 176; N.T., 8/17/18, at 20, 23. S.G. stated that she does not want to live with Father in his house in Cumberland Valley, Pennsylvania, and that she has been happy living with Mother. N.T., 8/16/18, at 181, 197.

S.G. testified that she would abide by a court order requiring her to comply with Father's partial custody periods after she relocates to St. Maarten. *Id.* at 187. At the same time, S.G. acknowledged that she ignored Father's e-mail to her in July 2018 and refused to reply to him regarding her preference for where she would spend summer vacation. *Id.* at 187. She also admitted to an incident in the summer of 2018, prior to the hearing, in which she had refused, along with A.G., to get into Father's car for Father's exercise of his partial custody period. *Id.* at 188.

At the hearing on August 17, 2018, Father testified that he is the CEO of an issue advocacy business. N.T., 8/17/18, at 2. Father testified that he had a good relationship with S.G.'s sibling, A.G., until the summer of 2017, when Mother did not provide A.G. to Father for his partial custody period. *Id.* at 30-36, 43. Father testified that he had a "very wonderful" relationship with S.G., until he withheld his permission for her to study abroad in France in December 2017. *Id.* at 38-44.

Father testified that he last saw S.G. in May 2018, and that it did not go well, as Father had offered S.G. a plan for her to spend the summer in New

Jersey, but she refused to speak with him about it. *Id.* at 47-49. Three weeks prior to the hearing, Father sent S.G. a text message and a picture, to which she did not respond. *Id.* at 47-48. Father stated that his attempts to pick up S.G. for his partial custody periods during the summer of 2018 were fruitless, as she would not be outside of Mother's house when he arrived, then would exit the house and stand at the top of the driveway, taunt him, and go back into the house. *Id.* Mother refused Father's request for her to intervene. *Id.*

Father testified that his relationship with S.G. would repair itself if she would spend more time with him, but that the relocation to St. Maarten would prevent such a reconciliation. *Id.* at 62. Father opposed the relocation because it would have a negative impact on his relationship with S.G., and he fears that his relationship will be non-existent if S.G. relocates to St. Maarten. *Id.* at 61-62.

Father also testified that the relocation would have a negative impact on S.G.'s relationship with E.G. and A.G., as well as her friends and relatives. *Id.* at 61. Father testified that he would not be able to participate in S.G.'s school activities. *Id.* at 57. Father also testified that, were S.G. to live with him, the school system S.G. would attend in Pennsylvania, Cumberland Valley School District, is superior to the school in St. Maarten, and that he would be willing to pay for S.G. to attend the nearby Camp Hill School District. *Id.* at 58-59.

Father also testified regarding his concern that Mother would not comply with a custody order directing her to return S.G. to the United States for his partial custody periods, and that he would be unable to gain Mother's compliance with any custody order. *Id.* at 68-69. Additionally, Father complained that Mother's proposed custodial schedule provided him less time with S.G. than he currently has in the existing custody order, and that he would have to spend a significant amount of money to exercise his partial custody periods. *Id.* at 65.

S.G.'s Guardian *ad litem* ("GAL") testified that, after speaking with S.G., whom he found to be extremely bright and mature, and considering the relocation factors mandated by 23 Pa.C.S.A. § 5537(h), he believed it would be in S.G.'s best interest to relocate with Mother, and inidicated that S.G. had expressed her preference to relocate with Mother. *Id.* at 143, 145.

On December 5, 2018, the trial court entered an Order granting Mother's Petition for relocation and continuing the October 8, 2012 Custody Order awarding shared legal custody to the parties, primary physical custody of S.G. to Mother, and partial physical custody to Father.

On December 26, 2018, Father timely filed a Notice of Appeal, along with a Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Father raises the following claims for our review:

A. Did the trial court err in allowing Mother[] to relocate with [S.G.] to St. Maarten in the Caribbean and inappropriately

apply[ing] the [] relocation factors [] pursuant to 23 Pa.C.S.[A.] § 5337(h)[?]

B. Did [the] trial court err in entering an [O]rder modifying the existing custody [O]rder[] without reviewing the [] factors pursuant to 23 Pa.C.S.[A.] § 5328[?]

Father's Brief at 6.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

We begin our analysis with 23 Pa.C.S.A. § 5337, which requires that a trial court consider the following factors when reviewing a proposed relocation of a minor child, giving weighted consideration to those affecting the safety of a child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A § 5337(h).

When rendering a decision on the proposed relocation, trial courts must delineate the reasons for [the] decision[,] on the record[,] in open court[,] or in a written opinion or order.

…

In expressing the reasons for [the] decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.

**A.V. v. S.T.**, 87 A.3d 818, 822-23 (Pa. Super. 2014) (citations and quotation marks omitted).

Father claims that the trial court failed to appropriately consider the relocation factors required by Section 5337(h). **See** Father's Brief at 19-44. In his brief, Father provides a lengthy discourse as to why each factor disfavors relocation. **See id.** Father's argument can be characterized as essentially asking this Court to reweigh and rebalance the evidence considered by the trial court. **See id.** In conducting our review, we emphasize the following portions of Father's argument, each of which he contends weighs against relocation:

- Father claims that his "strained and non-existent" relationship with S.G. is "entirely the doing of Mother," as Mother set "Father up to be the fall guy," in numerous respects. **Id.** at 21-22.

- Father claims that the Pennsylvania schools S.G. would attend, should she live with him, are far superior to the "Canadian-type" school S.G. would attend in St. Maarten. **Id.** at 24. Additionally, Father claims that the trial court ascribed unwarranted weight to Mother's evidence of the St. Maarten school's "superiority," as the evidence was the result of a quick Internet search. **Id.** at 25.

- Father claims that the trial court empowered Mother by failing to find her in willful contempt at various times in the

- 10 -

past and by permitting Mother to relocate to St. Maarten because she is "stressed" in her current employment. *Id.* at 29. Father claims that the trial court failed to adequately consider whether, under the totality of the circumstances, there is a reasonable likelihood that, in the nineteen months between the proposed relocation and S.G.'s eighteenth birthday, Mother will comply with any order pertaining to Father's partial custody. *Id.* Father also questions the genuineness of S.G.'s testimony that she would travel to Pennsylvania to participate in Father's partial custody time. *Id.* at 30-31. Father further contends that the trial court's confidence that Mother and S.G. will obey the trial court Order is misplaced*. **Id.** at 31.

- Father claims that S.G. mistakenly believes she will be living in paradise and that the situation will not work out for her. *Id.* at 32.

- Father claims that Mother has marginalized him and failed to encourage S.G.'s relationship with him. *Id.* at 34. Father contends that Mother condoned S.G.'s disrespectful texts and voicemail messages to Father, undermined Father's authority by filing a Petition seeking court approval for S.G. to study in France over Father's objection, and was complicit in S.G.'s refusal to participate in Father's periods of partial physical custody. *Id.* at 35.

- Father claims that Mother's relocation was motivated by her own pursuit of happiness, without consideration of preserving the relationship between Father and S.G. *Id.* at 38-39.

- Father claims that Mother's reduced stress level and greater availability is not evidence of an improved quality of life for S.G. *Id.* at 39.

- Father claims that Mother's motivation in relocating is to further distance Father's relationship with S.G. *Id.* at 41-43. Father highlights Mother's history of relocation and her failure to investigate other "less stressful" employment opportunities in Pennsylvania. *Id.*

- Father did not consider past abuse, present abuse, or other factors affecting S.G.'s best interest as relevant. *Id.* at 44.

Our review of the record indicates that the trial court fully considered each of the relocation factors enumerated in Section 5337(h). *See* Trial Court Opinion, 12/5/18, at 2-6 (unpaginated). We specifically note the following analysis by the trial court:

- With regard to the nature, quality, extent of involvement, and duration of S.G.'s relationship with Father, the trial court found that relocation would not harm the already "extremely strained and non-existent" relationship with Father. *Id.* at 2. With regard to S.G.'s siblings and grandparents, both paternal and maternal, the trial court found that relocation would not impede the occasional visits S.G. has with her family members, as her siblings are away at college, visits with her grandparents typically occur through Mother, and the current lines of communication—namely text, email, or phone—would still be available upon relocation. *Id.*

- With regard to S.G.'s age, developmental stage, and needs, as well as the impact of the relocation on her physical, educational and emotional development, the trial court found that S.G. wants to move with Mother, not because it is a "[p]aradise," but because she "clearly wants to live with her mother." *Id.* at 3 The trial court noted S.G.'s maturity, intelligence, and poise, as well as her adventurous spirit and desires to experience other parts of the world. *Id.* As to the effect of the relocation on her educational development, the trial court found that S.G. dislikes her current school because of its size and is enthralled by the prospect of going on to study in Canada, the United Kingdom, France, Spain, Germany, or the Netherlands. *Id.*

- With regard to the feasibility of preserving S.G.'s relationship with Father, the trial court found that there is a "minimal to non-existent" relationship that would be beyond repair, should Father force S.G. to live with him in Pennsylvania. *Id.* Additionally, the trial court noted that the proposed custody schedule is very generous to Father; Father is financially secure with easy access to major, international airports; and that the legal system is capable of enforcing the custody orders in St. Maarten. *Id.*

- 12 -

- With regard to S.G.'s preference to live with Mother, the trial court found S.G. to be extremely intelligent and mature. *Id.* at 4.

- With regard to whether Mother and Father have repeatedly promoted or thwarted S.G.'s relationship with the other parent, the trial court found both Mother and Father to have behaved questionably in the past. *Id.*

- With regard to whether the relocation would enhance Mother's quality of life, including monetary or emotional benefits as well as educational opportunities, the trial court found that Mother would not be able to pursue a career in academics in the United States as freely as she could in St. Maarten. *Id.* Specifically, the trial court found that Mother would be required to continue practicing medicine in the U.S., should she become a professor. *Id.* In the Caribbean, however, Mother could be a professor without having to work in the clinical sphere. *Id.*

- With regard to whether the relocation would enhance S.G.'s quality of life, including monetary or emotional benefits as well as educational opportunities, the trial court found that relocation would clearly do so. *Id.* at 5. The trial court noted that life in a foreign country would allow her to learn other cultures and become fluent in another language; receive greater academic attention at a smaller school; and spend more quality time with Mother than she currently does, as Mother's stress-load and work-load will be reduced. *Id.*

- With regard to the motivations of Mother and Father, the trial court found that both parties' positions were rooted in logic. *Id.* The trial court noted that "Mother hates her job and has found one that she believes is her dream job. Father loves S.G. [] [and h]e wants to be part of her life." *Id.* As a result, the trial court found this factor to neither favor, nor disfavor, relocation. *Id.*

- With regard to a history of abuse, the trial court found it to be a non-issue that neither favored, nor disfavored, relocation. *Id.*

- With regard to any other factor affecting S.G.'s best interest, the trial court found that S.G.'s GAL recommended the

relocation, as he believed it to be in S.G.'s best interest. *Id.* at 5-6.

As demonstrated, the trial court conducted a comprehensive analysis of the relocation factors provided in Section 5337(h). Father essentially asks this Court to re-weigh the evidence, which we will not do. *See* Father's Brief at 19-44; *see also C.R.F.*, *supra*, at 8 (stating that this Court's "role does not include making independent factual determinations."). This is not a case where the trial court failed to consider the Section 5337(h) relocation factors, broke the continuity of Father's relationship with S.G. and his participation in her life, or gave undue weight to Mother's role as having been the primary caretaker S.G. for the past 16 years. As the trial court properly observed, the evidence at the hearing showed that the relocation would not affect any relationship between Father and S.G., since any arguable relationship between them is fraught with difficulties caused by the interaction between them over the years, and not solely attributable to Mother, as Father argues.

We discern no error of law or abuse of the trial court's discretion in rendering its determination that the relocation factors under Section 5337(h) favor relocation. The trial court's legal conclusions are sound, and its findings are supported by competent evidence of record; thus, this Court must accept the findings of the trial court. *See C.R.F.*, *supra*, at 8.

In his second issue, Father argues that the trial court erred by failing to consider S.G.'s best interest under Section 5328(a). Father's Brief at 44-46.

The trial court correctly states, in its Pa.R.A.P. 1925(a) Opinion, that Father never raised this issue at the relocation hearing. Trial Court Opinion, 1/29/19, at 1 (unpaginated). As a result, Father has waived this issue on appeal. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

For the reasons detailed above, we affirm the trial court Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/05/2019