J-A04007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.C., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.B., | |
| Appellant | No. 3115 EDA 2016 |

Appeal from the Order Entered August 1, 2016
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 1186 CV 2016, 193 DR 2016

BEFORE: SHOGAN, SOLANO, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:               **FILED APRIL 05, 2017**

A.B. ("Father") appeals the order entered August 1, 2016, permitting K.C. ("Mother") to relocate with the parties' minor sons, A.C.B., born in January of 2012, and R.M.B., born in May of 2013 (collectively, the "Children"), from Brodheadsville, Monroe County, Pennsylvania, to Seaford, Sussex County, Delaware. The order also awarded shared legal custody of the Children to the parties and primary physical custody to Mother with periods of physical custody to Father.[1] We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court referred to this as shared physical custody. Order, 8/1/16, at 18, ¶2.

On February 19, 2016, Mother filed a complaint for primary physical custody of the Children and a request to relocate with the Children to Seaford, Delaware.[2]  On February 23, 2016, Father filed a counter-affidavit objecting to the proposed relocation.  Mother filed a notice of proposed relocation on February 24, 2016.  On March 23, 2016, Father filed an answer and new matter containing a modification request seeking primary physical custody of the Children if Mother pursued relocation.[3, 4]

The court conducted a custody/relocation hearing on June 1, 2016. Mother and Father, who were both represented by counsel, each testified on their own behalf.  In addition, the court heard from:  Maternal Grandmother, A.C.; Mother's friend, Amanda Lloyd; Father's employer and friend, Kevin Conkle; Father's employer, Frank Malpere; Paternal Grandmother, K.B.; and Father's cousin, B.R.[5]  At the time of the hearing, Mother and Father, who

---

[2]  Mother grew up in the Seaford, Delaware area and her extended family, including her mother, father, step-mother, sister, and brother, continue to reside there.  N.T., 6/1/16, at 7, 60.  In addition, Mother and Father previously resided in this area from August 2012 to August 2013.  **Id.** at 15.

[3]  At the time of the hearing, Father requested primary physical custody if Mother relocated to Delaware.  In the event Mother chose not to relocate, Father, however, requested shared physical custody.  **Id.** at 225-226.

[4]  Upon review of the record, prior to the entry of the August 1, 2016 order, the parties were not subject to a court order with regard to legal and physical custody of the Children.

[5]  The trial court incorrectly refers to B.R. as Father's sister.  Opinion, 8/1/16, at 5.

were separated and had a "strained" relationship, continued to reside together in the same residence in Brodheadsville. N.T., 6/1/16, at 5, 13. At the conclusion of the hearing, the court denied Mother's oral request to temporarily grant the relocation pending the court's decision, and declined to require Father to vacate the parties' residence. *Id.* at 285-289.

By order dated and entered August 1, 2016, the court granted Mother's request to relocate to Seaford, Delaware. The court further awarded shared legal custody to the parties, and primary physical custody to Mother with physical custody to Father on alternating weekends from Friday at 6:00 p.m. until Sunday at 5:00 p.m., at any time there is a break in the school calendar of five consecutive days and as the parties agree.[6] Also on August 1, 2016, the court issued an opinion analyzing the required custody and relocation factors. Thereafter, on August 26, 2016, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On September 6, 2016, the court filed a formal opinion pursuant to Pa.R.A.P. 1925(a) incorporating, in part, its opinion of August 1, 2016.[7]

In his brief on appeal, Father raises the following issues:

---

[6] The court further directed the parties to maintain the current shared physical custody schedule until relocation occurs. Order, 8/1/16, at 18, ¶2A.

[7] While the court's opinion pursuant to Pa.R.A.P. 1925(a) was filed and docketed on September 6, 2016, we note it was not forwarded until September 7, 2016.

A. Did the court err in its application of the relevant relocation factors and ultimate finding that [M]other carried her burden of showing the relocation and change in primary custody was in the [C]hildren's best interest?

B. Was it error for the court to consider evidence not of record, which was not subjected to cross examination, including a letter referencing a drug report and testimony which was heard in a PFA matter on essentially the same facts by another judge of concurrent jurisdiction?

Father's Brief at 10 (emphasis omitted).

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (internal citation omitted).

We have stated:

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody

proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern

is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338.

Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.
>
> (5) Supervised physical custody.
>
> (6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. *E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, Section 5337(h) sets forth the relocation factors that a trial court must consider when ruling on a relocation petition. *E.D.*, 33 A.3d at

79. Where a request for relocation of the subject child is involved, the trial court must consider the following ten relocation factors set forth within Section 5337(h) of the Act:

> **(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). **See E.D.**, 33 A.3d at 81 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.") (emphasis in original).

Further, with regard to the custody and relocation factors, we have stated as follows:

"**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. **E.D., supra** at 81. The record must be clear on appeal that the trial court considered all the factors. **Id.**

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. **A.M.S. v. M.R.C.**, 70 A.3d 830, 835 (Pa.Super. 2013). **A.V. v. S.T.**, 87 A.3d 818, 823 (Pa. Super. 2014).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of

reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014) (emphasis in original). Moreover, "When a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" *C.M.K. v. K.E.M.*, 45 A.3d 417, 421 (Pa. Super. 2012) (quoting *Baldwin v. Baldwin*, 710 A.2d 610, 614 (Pa. Super. 1998)).

Turning to Father's first issue, he asserts that the trial court misapplied the relevant relocation factors and erred in finding Mother established that primary physical custody and relocation was in the Children's best interest. Father's Brief at 14. Father argues that, as he was involved with the Children on a daily basis, his "full-time role . . . was not adequately addressed, the order was inappropriate under the law, and not in the children's best interest." *Id.* Referencing a lack of career advancement, poor educational performance, the necessity for daycare and impact on daily routine, and severance of family bonds, he proffers that Mother presented "no compelling reason" for relocation and "[a]bsent[] the alleged conflict between the parties, relocation is clearly not warranted." *Id.* Father avers relocation affords "no great improvement" to the quality of life for Mother or the Children. *Id.* at 16-17. Likewise, given his and his family's extensive involvement with the Children, coupled with Mother's desire to relocate three

and one-half hours away, Father argues there is no adequate substitute custody arrangement. *Id.* at 17. Lastly, Father questions the trial court's finding of no educational advantage weighing towards the Children's quality of life and long-term well-being in light of the evidence of Seaford School District's poor performance. *Id.* at 18. Noting the statistical evidence presented as to the two school districts in question, Father states, "Despite these facts, the trial court found, that 'neither School has an educational advantage over the other,' which is clearly against the facts as presented." *Id.* (internal citation omitted).

As we construe this issue, Father questions the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Under the aforementioned standard of review applicable in custody matters, these are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443. Upon review, we find no abuse of discretion.

In the case at bar, as required by law, the trial court carefully analyzed and addressed the factors under Section 5328(a) and Section 5337(h) in considering the Children's best interests and relocation. Opinion, 8/1/16, at 5-13. Significant to the trial court were Father's anger and threatening behavior and the resulting conflict between the parties, as well as Father's drug use. *Id.* at 6-10, 13-14.

Mother described the home environment as "toxic" and "hostile" noting, "[Father] is very angry. He does not communicate well, so it tends to lead to arguments, lots of yelling, lots of screaming. . . ." N.T. 6/1/16, at

- 11 -

31. She confirmed that this led to destructive behavior, such as Father breaking things and putting holes in walls. *Id.* at 32-33.

Moreover, evidence was also presented of Father's threatening behavior. Most recently, approximately one week prior to the custody/relocation hearing and the morning of the pre-hearing, Mother indicated that she called the police after Father became angered that she gave child A.C.B. milk in bed, and he threatened Mother. N.T., 6/1/16, at 38. Mother testified, "He was very angry. He had threatened against [sic] me he was going to harm me. And then when he left in his fit of anger, he took his handgun with him and left the house very abruptly." *Id.* at 38-39. Specifically, as reported by Mother, Father stated "he was going to knock [me] out and he should have done it a long time ago." *Id.* at 38, 115. Similarly, Mother recounted another incident where Father became angered and flipped the mattress after A.C.B. had an accident and wet the bed. *Id.* at 33-34. Discussing this incident, Father admitted he was "not a great role model" for his children. *Id.* at 265.

In yet another incident, Mother described Father becoming angered with and confronting another driver with a gun while the Children were in the car. N.T., 6/1/16, at 40-41. In addition, altercations between Father and his brother-in-law, as well as Father and his uncle, were related. *Id.* at 19-20, 43. Further, Mother testified that Father smoked marijuana "daily," including while the Children were in his care. *Id.* at 42. While Father indicated his intent not to smoke in the future, he acknowledged that he last

smoked two and one-half to three weeks prior to the custody/relocation hearing. *Id.* at 235, 262.

In summarizing its analysis, the trial court stated as follows:

> In conclusion, we find that the factors weigh more heavily in favor of the Children relocating to Seaford, Delaware. We make this determination after careful review of the record and evidence. While no one factor alone outweighs any other factor, we must consider all the factors together to determine what is best for the Children. Father has had repeated outbursts, the last one which resulted in the issuance of a PFA. In addition, after Father indic[a]ted that he does not want to use drugs, he recently tested positive for a controlled substance. We are concerned about the level of hostility between the parties and Father's apparent inability to control his anger. We will require Father to continue with anger management counseling and drug and alcohol treatment. In weighing all if [sic] these factors; we believe that it would be in the best interests of the Children to relocate with Mother. Accordingly, we will grant Mother's request to relocates [sic] and her request for primary physical custody of the Children.
>
> Nevertheless, we recognize that Father has been involved in the Children's lives. As such, we will grant Father extended periods of visitation over school holidays and during summer school vacation. We believe, however, that Mother will be better able to continue to provide the care and support for the Children and that the relocation will be in the best interests of the Children. . . .

Trial Court Opinion, 8/1/16, at 13-14.

After review of the record, we determine that the trial court's findings regarding the custody factors set forth in Section 5328(a) and relocation factors set forth in Section 5337(h) and determinations regarding the Children's best interests and relocation are supported by competent evidence in the record. *See C.R.F.*, 45 A.3d at 443. As we find that the

- 13 -

trial court has not abused its discretion, and its conclusions are not unreasonable in light of the sustainable findings of the trial court, we will not disturb them. *Id.*

In his second issue, Father maintains the trial court committed reversible error by considering extra-judicial evidence not subject to cross-examination in violation of his right to due process.[8]  Father's Brief at 19. Specifically, Father points to a letter forwarded post-hearing that referenced drug test results from Catholic Social Services, as well as a Protection from Abuse ("PFA") order entered against Father post-hearing.[9]  *Id.*  Father suggests the trial court's consideration of this evidence "had a prejudicial effect" on the court's analysis and determination of the relevant factors.  *Id.* Moreover, Father argues the court's consideration of this evidence was in violation of his right to due process and the "in court presentation of evidence."  *Id.* at 19-20.  Father further maintains that the court's consideration of this evidence as it relates to the PFA order was in violation of the coordinate jurisdiction rule.  *Id.* at 20.  Father posits that, with the PFA, Mother was attempting to exclude Father from the joint home based upon the same evidence presented at the June 1, 2016 custody/relocation hearing, where she was unsuccessful.  *Id.* at 22.

_____

[8]  We observe Father proceeded to provide extra-judicial evidence of his own with his submissions to this Court.

[9]  A final PFA order was entered against Father on July 25, 2016.

In assessing this challenge, the trial court found a lack of prejudice to Father with regard to its ultimate determination regarding custody and relocation. The trial court stated:

> [Father] complains that we erred in considering evidence which is not of record, a Protection from Abuse ("PFA") Order. The PFA Order was entered after our hearing but before our Opinion was filed. We took judicial notice of the PFA Order which was issued by another judge of this Court. Nevertheless, we found [Mother] credible in her testimony concerning [Father's] anger and outbursts. The issuance of the PFA did not have a prejudicial effect on our consideration of the factors for custody or granting of [Mother's] request to relocate.
>
> In his next point of error, [Father] complains that we committed an error in admitting evidence related to an alleged positive test by [Father] for controlled substances. First, we did not admit the letter into evidence which references the positive test by [Father] for controlled substances. However, we agree that we should not have addressed the positive test by [Father] in our Opinion. Nevertheless, it does not change our decision about what is in the Children's best interest and permitting the relocation to Seaford, Delaware. We find no error in this issue.

Statement Pursuant to Pa.R.A.P. 1925(a), 9/6/16, at 1-2 (unpaginated).

With this, we agree.

> An error will be deemed harmless if:
>
> (1) the error did not prejudice the defendant or the prejudice was *de minimus*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence . . . was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Markman***, 916 A.2d 586, 603 (Pa. 2007). ***See***

***Foflygen v. Allegheny General Hospital***, 723 A.2d 705, 708 (Pa. Super.

- 15 -

1999) ("[Evidentiary] rulings must be shown to have been not only erroneous but also harmful to the complaining part[y].").

Instantly, as indicated above, evidence was presented that Father smoked marijuana on a daily basis, including while the Children were in his care. N.T., 6/1/16, at 42. Father himself admitted to having smoked marijuana within two and one-half to three weeks of the custody/relocation hearing. *Id.* at 235, 262. Moreover, Father had not completed a drug and alcohol evaluation as court-ordered.[10] *Id.* at 234-235, 260-262.

As to Father's anger and abusive behavior, evidence was presented regarding incidents involving Father's outbursts and threatening behavior, including those directed to and in the presence of the Children and involving firearms. *Id.* at 33-34, 38-41. In addition, Father had not completed anger management, as court-ordered.[11] *Id.* at 233-234, 257-259. As such, there was sufficient evidence with regard to Father's drug use and anger that the post-hearing evidence regarding drug test results and a PFA was merely

_____

[10] By order dated March 15, 2016, and entered March 18, 2016, incorporating the recommendations of the custody conciliation conference, Father was directed to submit himself to Catholic Social Services for a drug and alcohol evaluation and follow all recommendations for treatment. Order, 3/18/16, Recommendation, ¶2.

[11] Also by order entered March 18, 2016, Father was instructed to attend family counseling focusing on anger management at Catholic Social Services for consecutive weeks. Order, 3/18/16, Recommendation, ¶1.

cumulative and was not prejudicial, thereby rendering any error harmless. Thus, Father's claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/5/2017